```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF DELAWARE

 3

 4    IN RE ENVISION HEALTHCARE CORP. )  C.A. No. 18-1068-RGA-SRF
                                      )  CLASS ACTION
 5                                    )  CONSOLIDATED SHAREHOLDER
                                      )  LITIGATION
 6

 7                                       J. Caleb Boggs Courthouse
                                         844 North King Street
 8                                       Wilmington, Delaware

 9                                       Tuesday, November 26, 2019
                                         4:02 p.m.
10                                       Scheduling Conference

11

      BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.
12

13    APPEARANCES:

14             COOCH & TAYLOR P.A.
               BY:  BLAKE A. BENNETT, ESQUIRE
15
                        -and-
16
               MONTEVERDE & ASSOCIATES PC
17             BY:  JUAN E. MONTEVERDE, ESQUIRE

18                               For the Plaintiffs

19
               RICHARDS LAYTON & FINGER, P.A.
20             BY:  RAYMOND J. DiCAMILLO, ESQUIRE
               BY:  JEFFREY L. MOYER, ESQUIRE
21             BY:  DANIEL E. KAPROW, ESQUIRE

22                      -and-

23             SIMPSON THACHER & BARTLETT LLP
               BY:  CRAIG S. WALDMAN, ESQUIRE
24             BY:  JOSHUA SLOCUM, ESQUIRE

25                      -and-
```

```
1    APPEARANCES CONTINUED:

2
              WACHTELL LIPTON ROSEN & KATZ
3             (Via Telephone)
              BY:  RACHELLE SILVERBERG, ESQUIRE
4             BY:  COREY J. BANKS, ESQUIRE

5                                 For the Defendant

6
                          *** PROCEEDINGS  ***
7

8             DEPUTY CLERK:  All rise.

9             THE COURT:  All right.  Good afternoon,

10   everyone.  Please be seated.

11            (Everyone said, Good afternoon, Your Honor.)

12            THE COURT:  This is, I guess, In Re:  Envision

13   Healthcare Corporation Shareholder Litigation under the

14   caption of or case number of 18-1068.

15            All right.  So I see one person that I know.  So

16   why don't you all just tell me who you are starting on the

17   plaintiff's side over here.

18            MR. MONTEVERDE:  Sure.  Good afternoon, Your

19   Honor.  Juan Monteverde of Monteverde & Associates for

20   plaintiff.

21            MR. BENNETT:  Good afternoon, Your Honor.  Blake

22   Bennett from Cooch & Taylor.

23            THE COURT:  So I have seen you before.

24            MR. BENNETT:  Yes, Your Honor.

25            THE COURT:  All right.  And on this side?
```

1           MR. WALDMAN:  Good afternoon, Your Honor.  Craig

2    Waldman and Josh Slocum, both from Simpson Thacher on behalf

3    of Envision.

4           THE COURT:  All right.  And Mr. DiCamillo, I

5    actually know you.

6           MR. DiCAMILLO:  Good afternoon, Your Honor.

7    Good to see you.  My colleagues, Mr. Moyer and Dan Kaprow

8    are here.

9           MR. MOYER:  Good afternoon, Your Honor.

10           MR. KAPROW:  Good afternoon, Your Honor.

11           THE COURT:  Good afternoon.  Dan Kaprow, are you

12    relatively new at this?

13           MR. KAPROW:  Yes.

14           MR. DiCAMILLO:  He's been doing it longer than

15    he will admit, Your Honor.

16           THE COURT:  Okay.  Well, so in any event, nice

17    to see you.

18           MR. DiCAMILLO:  Rachelle Silverberg and Corey

19    Banks are on the line.

20           THE COURT:  And good afternoon to you all.

21           MS. SILVERBERG:  Good afternoon.

22           MR. BANKS:  Good afternoon.

23           THE COURT:  So you seem to have done some work

24    on this Scheduling Order because you agreed to quite a few

25    things and a couple things that you had disputes on were not

1    all that significant.

2          So actually let me just start at the back.  I

3    did read through this or at least skim through this, and I

4    found paragraph 16 describing the ADR process mystifying,

5    but I assumed that you wanted to discuss the ADR process

6    during the scheduling conference, or is this just copied

7    from some other order without any thought?

8          MR. MONTEVERDE:  I think we're willing to

9    discuss it.  I think we also had envisioned, at least from

10   the plaintiff's side, that it's now premature to do any sort

11   of mediation, that once discovery commences, we may be in a

12   position to have private mediation.

13         THE COURT:  Okay.  All right.  That's what this

14   means?

15         MR. WALDMAN:  Yes.

16         THE COURT:  Okay.

17         MR. WALDMAN:  We're in agreement.

18         MR. MONTEVERDE:  You agree with that?  Okay.

19         THE COURT:  All right.  Okay.

20         Then the other thing I was curious about from

21   trying to figure out exactly what's going on here is Pages 4

22   and 5 where you talk about class certification, and the

23   plaintiffs want to do it in early 2021, and the defendants

24   want to have plaintiff do it in early 2020.  Something is

25   going on here that I'm not entirely sure what it is.

1        Why are the parties so far apart on this?  And

2   if somebody would care to tell me what's actually happening

3   here, why you're arguing about this.

4        MR. WALDMAN:  Sure.

5        MR. MONTEVERDE:  Sure.  I can give you the

6   perspective from plaintiff.  We feel this is our case, and

7   we should prosecute it in a timeliness that we've done in

8   other cases.  I brought orders from other cases that I'm

9   litigating, and typically we don't do the class

10  certification until we're sort of done with fact discovery.

11       Defendants here are taking the position that

12  although they don't want to delay the commencement of fact

13  discovery, they want plaintiff to go first.  They want to

14  bifurcate discovery.

15       THE COURT:  Right.  I saw that.

16       MR. MONTEVERDE:  And they want the plaintiff to

17  then move immediately for class certification.  They also

18  want to bring experts on class certification which I've

19  never seen in a 14A merger case that happens in 10(b)(5)

20  where you have market efficiencies and things like that.

21  You need to connect.  Not present here.

22       But they haven't told us what those experts will

23  be for.  We've asked, and they haven't really shared.  So

24  we're at a loss.

25       But if they're going to do all that, I think

1   we're going to want to have a very good understanding of

2   facts because my guess is damages is going to come into

3   play.  So I don't see how I can be moving to certify a class

4   until I have completed discovery.

5           THE COURT:  What's the damages you get for a 14A

6   violation?

7           MR. MONTEVERDE:  Well, the way we view it, and

8   this is viewing and following what happened in Virginia Bank

9   Shares is if we -- once we identify a misleading statement

10  as we have here, we now focus on what the company was worth,

11  and I think the valuation will be one that our expert for

12  damages will have to present to the Court.  We have here a

13  company that we feel was worth more money than it was sold

14  for, and the sensitivity analysis we believe was done

15  intentionally to get you to fairness -- within fairness

16  range.

17          All the other analysis in the discounted cash

18  flow were way above the price, between five to $6, and we

19  have, if I remember correctly, close to a hundred million

20  shares or 990 shares.

21          THE COURT:  So the money, whatever money we're

22  talking about, who gets it?

23          MR. MONTEVERDE:  The shareholder.  The former

24  envision shareholders who were record holders as of the day

25  that they were entitled to vote.  That's how you measure, if

1    you're asking me the date.

2              And that's the settlement we have done which I

3    just argued in the -- we just had an argument in the Eighth

4    Circuit that became a settlement in Transnomic (phonetic).

5    We recovered money and was paid to those who had the right

6    to vote on the record holder day of the merger.  And that's

7    how the other cases that I know, I'm aware of, settlements

8    up there, that's how you're measuring damages or the date of

9    measurement, measuring the compensation.

10             So for us, we don't think that plaintiff should

11   be forced to expedite discovery to do it over the holidays,

12   start collecting documents today --

13             THE COURT:  Yeah.

14             MR. MONTEVERDE:  -- and be forced to move for

15   certification in February.

16             THE COURT:  All right.

17             MR. MONTEVERDE:  And I have orders.

18             THE COURT:  Yeah.  Yeah.  Stop.

19             MR. MONTEVERDE:  Every time I've done that --

20   yeah.

21             THE COURT:  Why is it that you want to do what

22   you're proposing here?

23             MR. WALDMAN:  Yeah.  In order for us to take

24   meaningful discovery in the case, we want to know what the

25   plaintiff's damages theory is.  The question that Your Honor

1    just asked to the plaintiffs:  What are they going to pursue

2    in this case?

3              This is a unique circumstance to us.  We view

4    their case as they have to allege, and I think are alleging

5    that if we had disclosed more, then the deal would have been

6    voted down.  In that case, there's two possible damages

7    theories that we think the plaintiffs could pursue.

8              One is the value of the shares on the day the

9    merger was voted down.  That, of course, would be less than

10   the deal price because the stock always drops if a deal is

11   voted down, or the shareholders could hold onto shares for a

12   much longer period of time.  And if that's what the

13   plaintiff is alleging, then we're going to have to have an

14   understanding and do discovery of the company's performance

15   and the stock price from the time of the deal -- the vote on

16   the deal through the time of the projections, so a number of

17   year period.

18              We --

19              THE COURT:  What does this have to do with

20   whether or not they certify the class in early next year or

21   early the following year?

22              MR. WALDMAN:  Because in the class certification

23   motion, we would get -- right, the plaintiff would have to

24   allege some damages theory that's common across the class,

25   and that would give us an indication of what the damages

1    theory is in the case.  The federal rules provide for class

2    certification to be done as soon as practical, right, for

3    the parties.

4               And in part, in this case, it's practical to do

5    it in February, or March, or April.  There's one single

6    plaintiff who's going to have to produce documents.  Having

7    been in many of these cases before, it's not going to be a

8    voluminous set of documents.  It's going to be a very small

9    set of documents.

10              So we're asking them to produce the documents

11   and file their class certification motion so we can have an

12   understanding of what their damages theory is going to be in

13   the case.  Otherwise, we're going to have to -- under lead

14   plaintiff's schedule, we'd have to go through all of

15   discovery, and then only after discovery is over would we

16   find out what their common class damages theory is.

17              That, to us, isn't an efficient way to do

18   discovery, Your Honor.

19              MS. SILVERBERG:  Your Honor, this is Rachelle

20   Silverberg for Wachtell, I would just reiterate that Rule 23

21   sets a time frame.  And under Rule 23(c)(1), it provides

22   that for class certification "at an early practical time

23   after a person sues or is sued as a class representative,

24   the Court must determine by order whether to certify the

25   action as a class action."

1         And given that provision, we believe that we're

2    entitled to have the Court determine whether or not

3    plaintiff is entitled to class certification without having

4    to wait until the end of the entire discovery process.

5         And again, as Mr. Waldman noted, we do not

6    expect there to be extensive discovery from the plaintiff.

7    The plaintiff is an individual; and therefore, we think that

8    it's certainly reasonable to ask that plaintiff commence his

9    production and complete it in about two to three months with

10   the Court then determining class certification shortly

11   thereafter in the briefing in the matter.

12        So what we are proposing, we believe, is

13   consistent with what Federal Rule 23(c) provides and has

14   also been done in other Section 14A cases.  I know

15   Mr. Monteverde said that he had examples in which the

16   parties in those cases did agree to do class certification

17   at a later date, but there are also other examples, and I

18   believe Mr. Waldman has them, of Scheduling Orders in 14A

19   cases such as this in which the Court did agree to hear

20   class certification before the completion of that discovery.

21             THE COURT:  I heard 23(b)(1).

22             MS. SILVERBERG:  (c)(1).

23             THE COURT:  Sorry, that's what I meant, (c)(1).

24   Yes.  Thank you.

25             MR. MONTEVERDE:  (c)(1).

```
1                    THE COURT:  I'm just curious, do both sides
2        agree that's the kind of class that we're talking about
3        here, or is there a possibility of (c)(2) or (c)(3)?
4                    MR. MONTEVERDE:  No.  Well, I think what they're
5        talking about, this will be a 23(b)(3) class, an opt-out
6        class.  I think (c)(1) speaks as to the timing, and I have a
7        case --
8                    THE COURT:  Wait.  Wait.  Hold on a minute.
9                    MR. MONTEVERDE:  Sure.
10                   THE COURT:  Yeah.  Sorry.
11                   MR. MONTEVERDE:  I have --
12                   THE COURT:  I don't do too much of this, so I'm
13       getting the B's and the C's mixed up.  But is this a (b)(3)
14       class?
15                   MR. MONTEVERDE:  Yes, and I have a hard copy of
16       the statute, if it's easier for the rule.  I mean --
17                   THE COURT:  Hey, I'm an E judge.
18                   MR. MONTEVERDE:  But the case I was going to
19       talk about is a Fourth Circuit case from 2016, and that's
20       been the rule interpretation.  There was an amendment to
21       23(c)(1) to now be at an hourly practicable time as opposed
22       to, as it used to be, as soon as practicable.  And the Court
23       has interpreted that it's recognized there is a need for
24       thorough valuation of Rule 23 factors, and for this reason,
25       the rule does not require or encourage premature
```

1    certification termination.  And that's what defendants are

2    asking the Court to do here.

3         If they're going to fight certification, and

4    damages is the problem that they see, and they don't think

5    we've alleged sufficient facts, I think discovery on that

6    needs to happen first --

7         MS. SILVERBERG:  And Your Honor --

8         MR. MONTEVERDE:  -- at a minimum.

9         MS. SILVERBERG:  -- the proposed order that we

10   submitted to the Court expressly addresses the issue that

11   Mr. Monteverde raises.  Our Proposed Scheduling Order

12   provides for plaintiff to move for class certification

13   before the completion of fact discovery at the end of

14   February and then provide a time frame for defendants to

15   file their opposition brief, including any expert reports.

16   And there's a very express fail-safe which is if, after

17   defendants file their responsive papers, plaintiff believes

18   that he needs additional fact discovery in which to submit

19   his reply, including any rebuttal affidavit, either by

20   consent of the parties or through order of the Court, the

21   plaintiff need not submit his reply papers until the

22   completion of fact discovery.

23        And what that structure does is it, number one,

24   complies with Rule 23(c)(1) in terms of setting up an

25   initial schedule that would allow for early determination of

1    class certification.  But if during the briefing, it turns

2    out that plaintiff is correct in terms of what he needs, we

3    do not believe he will be, but if that turns out to be

4    correct, then it provides for an extension of the schedule

5    on class certification to ensure that plaintiff has the

6    information he says he needs.

7            MR. MONTEVERDE:  So the way we look at that,

8    Your Honor, is defendants are trying to complicate things

9    and make us come to Court more and more than necessary

10   because that's going to require motion practice.  What we're

11   asking is what we've done in every case, both in Delaware

12   Chancery Court as well as throughout the country in federal

13   cases challenging merger cases or merger transactions, and

14   that is all discovery should happen at the same time.

15           Let us do paper discovery of the defendants.

16   Let defendants do paper --

17           THE COURT:  Well, see, that's a different

18   question, whether all the discovery should happen at the

19   same time than whether or not there should be early class

20   certification; right?

21           MR. MONTEVERDE:  No, because I would then say

22   once paper discovery happens, then we should have all the

23   depositions.  Plaintiff can go first, but it's at that time

24   that we should be doing the depositions.  Because if we're

25   doing class certification now, they're going to want

1    plaintiff's deposition immediately.  That's why they're

2    going to -- they're going to ask for that as part of their

3    opposition papers or as part of their timing to oppose.

4              And that's what is provided in their proposed

5    schedule.  So they're bifurcating.  They want plaintiff to

6    do all discovery first, plaintiff to seek certification.

7    And then only then, defendants get to put witnesses and

8    produce documents in the late spring.  And what --

9              THE COURT:  But I don't have to agree to that.

10   I could say --

11             MR. MONTEVERDE:  You could --

12             THE COURT:  -- you do class certification early,

13   you know, February of next year.  There is delay built in if

14   delay needs to happen, but you can go ahead and ask for

15   discovery right now.  They can ask for discovery.

16             Presumably, in fact, whatever discovery they ask

17   of your client won't be hard to respond to.  It may be

18   harder for them to respond to discovery he asks of them.

19             Even if I do the early class certification

20   motion, why shouldn't I have all discovery happening at the

21   same time?

22             MR. WALDMAN:  The schedule currently

23   contemplates that, I believe, plaintiff can ask us for

24   discovery and will ask us for discovery now, and we'll start

25   producing documents.  Because it's a single plaintiff and so

1    little documentary discovery will be received from the

2    plaintiff, we've put in a date of February 19th, 2020 for

3    the plaintiff to substantially complete.

4          We, Envision, and the individuals who have a lot

5    more discovery, so we've given until May to complete ours,

6    but we certainly contemplate that discovery will be going on

7    on both sides.

8          MR. MONTEVERDE:  So I just don't see, Your

9    Honor, how it's fair for plaintiff when they know we know

10   they're going to attack damages to not have, at a minimum,

11   the ability to finish paper discovery.  So I understand

12   perhaps the compromise that perhaps Your Honor can envision

13   is let us do paper discovery, finish it in the spring or

14   early summer, then let's have class certification late

15   summer or early fall, and then do the depositions in early

16   fall.

17         Plaintiff can go first.  And that way, I think

18   that perhaps is sort of a compromise.  It's not what I was

19   looking to.  It's not what I've done in other cases, but

20   perhaps that splits the baby, so to speak, and we don't have

21   to be in Court every other month now with issues which is

22   what I envision will happen.  Because if we have different

23   dates, and let's say they don't agree with our objections,

24   that's one motion on my compel or compelling my response.

25   Then with their cutoff at a later time, that I'm going to

1    have my objection or my motion to compel based on their

2    objections at a later time.  We're essentially going to be

3    here every other month.

4              What I'm suggesting is a more practical which is

5    what I've done in every other case I have.  On the same

6    track --

7              THE COURT:  All right.

8              MS. SILVERBERG:  Your Honor, if I may just

9    respond to that briefly?

10              THE COURT:  No.  No.  No.  Ms. Silverberg,

11    generally I do prefer the arguments to be done by the people

12    who are here.  So let me just think about this for a minute.

13              You know, there's a lot of talk here about

14    privilege logs.  Does plaintiff expect to have a privilege

15    log here?

16              MR. MONTEVERDE:  We haven't been propounded with

17    any discovery, so I don't know what they're going to ask

18    for.  I think that was just as part of a customary

19    provision.

20              THE COURT:  Okay.

21              MR. MONTEVERDE:  But I don't -- all I can

22    imagine is if they ask, for example, for communications with

23    counsel involved regarding our retention, they may ask for

24    emails, maybe we would.  I don't know if they're going to,

25    but if they did, I would envision that being privileged.

1    MR. WALDMAN:  If there are privileged documents

2    in what's responsive, we would want a log.  It's hard to

3    know whether there's an email that has an unprivileged and a

4    privileged portion.  I don't know whether there will be or

5    not.

6    MR. MONTEVERDE:  I think they're being safe

7    putting it in.

8    MR. WALDMAN:  But if they are, we would like it

9    approximately two weeks after the substantial completion,

10   and we're willing to do the same thing on our side if he --

11   THE COURT:  Well, so here's what I want to do:

12   I'm not going to have all sorts of interim deadlines that

13   are different for the plaintiff than they are for the

14   defendant.  There should be symmetry in terms of the timing

15   and the requirements, but I also have trouble imagining why

16   the plaintiff with their thicket of cases where they've done

17   this before, why damages theories that would be relevant to

18   whether or not you certify a class, you know, have to be

19   teased out to the end.

20   So with that in mind, Mr. Monteverde, if I'm

21   going to have you do the class certification motion without

22   waiting around for a year, is there some reason why it

23   should be January?

24   MR. MONTEVERDE:  I think May is the deadline.

25   Everyone agreed May 29th, 2020 to be the deadline of

1   substantial completion of paper discovery.

2           THE COURT:  Well, so class certification, let's

3   move things back a month.  You know, there's no reason for

4   you to be having to file your motion on January 8th.  That

5   seems like a particularly inopportune time.

6           So you know, in paragraph 4, you can move those

7   dates.  Oh, I'm sorry.  That's the wrong year.

8           MR. WALDMAN:  Yes, Your Honor.

9           THE COURT:  Sorry.  Sorry.  Sorry.  I thought

10  that was --

11          MR. MONTEVERDE:  No, they had it teed up.

12          MR. WALDMAN:  We had --

13          THE COURT:  No, I was looking at the wrong --

14          MR. MONTEVERDE:  Right.

15          THE COURT:  -- page.  Yeah, okay.

16  February 28th, 2020, is there some reason why you can't do a

17  motion by that time?

18          MR. MONTEVERDE:  Because the reason I have is

19  that I know they're going to come, and I don't know yet.

20  They haven't told us what the experts are for on class

21  certification, but I can envision they're going to try

22  something similar to a 10(b)(5) case, that we're going to

23  need documents.  And if we're not going to have substantial

24  completion of those until May 29th, 2020, I don't think we

25  can put forth the theory that they're saying we need to put

1   forth.

2            THE COURT:  Well, you know --

3            MR. MONTEVERDE:  That's.

4            THE COURT:  -- just reading the rule literally,

5   as early as a practicable time --

6            MR. MONTEVERDE:  Right.

7            THE COURT:  -- it seems to me that

8   February 28th, which is, after all, three months from now,

9   you know, you can --

10            MR. MONTEVERDE:  I don't see --

11            THE COURT:  -- get documents if you want.  I

12   don't know what kind of documents you need --

13            MR. MONTEVERDE:  Well --

14            THE COURT:  -- but that's not what we're here to

15   decide right now.  So I'm going to adopt the defendant's

16   schedule for doing class certification which is on Page 5.

17            MR. MONTEVERDE:  Well, could we move it a little

18   bit at least because I do know we're going to need some

19   documents.

20            THE COURT:  When you say "move it a little bit

21   at least," what did you have in mind?

22            MR. MONTEVERDE:  Well, if they're going to

23   produce a list of banker records and some of the basic

24   financial documents that we can at least use, so I'm

25   assuming we'd probably get them sometime in January or early

1    February.  And we may need to discuss them internally, and

2    we may need an expert in that regard, so I think maybe late

3    or mid-April.

4            THE COURT:  Yeah, that seems reasonable.  So

5    I'll give you -- add in 45 days to everything there.  Okay?

6            And in terms of the document production, so both

7    sides agree document production should be substantially

8    complete by May 29th?

9            MR. MONTEVERDE:  Sure.

10           THE COURT:  They seem to have the same dates for

11   privilege logs.

12           MR. WALDMAN:  Your Honor, in order to take

13   Mr. Monteverde's client's deposition in conjunction with

14   class certification, we will need his client's documents

15   before.

16           THE COURT:  Well, so ask for them.  He's

17   supposed to respond in 30 days.  As you say, he's only going

18   to have a handful; right?

19           MR. WALDMAN:  Okay.

20           MR. MONTEVERDE:  Yes.

21           THE COURT:  I mean, how hard is it?

22           MR. WALDMAN:  It's not a challenge if the

23   plaintiff will produce them for the deposition.

24           THE COURT:  You know, you all at least have an

25   excuse.  You're asking for hundreds of thousands of

1   documents.

2          MR. WALDMAN:  Yes.

3          THE COURT:  You already said he's only going to

4   have a handful.  If you ask for what you need, he's got very

5   little reason not to provide them, you know, within the

6   rules.

7          MR. MONTEVERDE:  Yeah, the only thing I can

8   imagine is an extension, courtesy extension.  So if they

9   produce them today, if they send me a discovery request

10  today --

11         THE COURT:  Yeah.

12         MR. MONTEVERDE:  -- they are Christmas day.

13         THE COURT:  I think they will probably not

14  demand that you produce them on Christmas day.

15         MR. MONTEVERDE:  I envision a couple courtesies

16  there.

17         MR. WALDMAN:  Of course.

18         THE COURT:  Okay.  So basically the part about

19  early discovery, that's just knocked out so that probably

20  won't have any actual impact.  The deposition discovery,

21  plaintiff says they want 18.  Defendant says they want 14.

22         Is there some magic as to how you came up with

23  your different numbers?

24         MR. MONTEVERDE:  Yes.

25         MR. WALDMAN:  Yes, I think there was just a

1    little bit; right?

2              MR. MONTEVERDE:  Well, I know there's 12 named

3    individuals, and they're going to raise state of mind, so

4    that potentially means we may need everyone there.  Then you

5    have, if I recall correctly, three investment bankers who

6    were working on fairness opinions.  It may be that we just

7    need one banker, or it may be that we end up --

8              THE COURT:  Okay.  I'll give you the 18.

9              MR. MONTEVERDE:  Thank you.  The one --

10             THE COURT:  So basically just take plaintiff's

11   language and cross out defendant's.  Was there anything else

12   in here that was actually disputed?

13             MR. MONTEVERDE:  Well, if I may go back on the

14   class certification, not the dates, especially if we have to

15   do things earlier than we expected, they haven't told us

16   what these experts are for.  I think I would like to hear

17   what their experts are going to be here for so we can be

18   more productive.

19             MR. WALDMAN:  We'd have to know what the class

20   is in order to tell you what experts we're using, right.  So

21   when you tell us what the class is, we'll talk to you about

22   who our experts are.

23             MR. MONTEVERDE:  Well, we've talked about the

24   class is those who had the right to vote on the record

25   holder date.

```
 1                    THE COURT:  Okay.  Why don't you all try to work
 2   that out.  If you've got experts that you're planning on
 3   using, I think you should be telling him who they are
 4   without it being held against you if you choose not to use
 5   them.
 6                    MR. MONTEVERDE:  So could we put a date that so
 7   if we're going to be moving for class certification in
 8   mid-April, could they tell us by mid-February who they
 9   think?  I mean --
10                    THE COURT:  Mid-March.
11                    MR. MONTEVERDE:  -- or mid-March?
12                    MR. WALDMAN:  Your Honor, would this be
13   reciprocal?  Would we get an understanding of who --
14                    MR. MONTEVERDE:  Sure.
15                    THE COURT:  I think he has in mind using some
16   experts.  Yeah, it should be reciprocal.
17                    MR. MONTEVERDE:  For class certification, it is?
18                    MR. WALDMAN:  For class certification.
19                    MR. MONTEVERDE:  Sure.
20                    MR. WALDMAN:  Our opposition will be opposing
21   your motion, so we might need a little bit of time once we
22   hear who your expert is and what their theory is to tell you
23   who our expert is, but we're happy to have a meet and confer
24   and try to get together and talk.
25                    THE COURT:  But I think it would just help all
```

1    around --

2                    MR. WALDMAN:  Understood.

3                    THE COURT:  -- to have a reciprocal disclosure.

4                    MR. MONTEVERDE:  So will that -- by March 15th,

5    parties -- you want to do a reciprocal exchange?  We don't

6    intend -- as I sit here today, I had not envisioned experts

7    in a class certification.  I haven't seen it in any of my

8    other cases or my colleagues' other cases, so I was at a

9    loss.

10                   THE COURT:  Okay.  Well, if you don't have any,

11   it will be easy.

12                   MR. WALDMAN:  Yeah.

13                   MR. MONTEVERDE:  So by March 15th, we'll

14   exchange experts --

15                   MR. WALDMAN:  We'll tell you --

16                   MR. MONTEVERDE:  -- or identify --

17                   MR. WALDMAN:  We'll tell you what topics we

18   intend to offer expert testimony without waiver.  If we see

19   something in your motion that's different --

20                   MR. MONTEVERDE:  Correct.

21                   MR. WALDMAN:  -- we need to be able to do that.

22                   MR. MONTEVERDE:  I'm okay with that.

23                   MR. WALDMAN:  Thank you.

24                   THE COURT:  Okay.  So I think the only other

25   things that you need from me are a trial date and a pretrial

1    date.

2            So based on what you've submitted, the trial

3    date that I had here was October 4th of 2021.  And the

4    pretrial conference was September 17th of 2021 at 2:00 p.m.

5            MR. MONTEVERDE:  I'm sorry.  September 17th?

6            THE COURT:  17th.

7            MR. MONTEVERDE:  Thank you.

8            MR. SLOCUM:  You said 2:00 p.m.?

9            THE COURT:  2:00 p.m.  So do you think you can

10   take this order, and what I've said here, and reduce it to

11   one writing that I can sign?

12           MR. WALDMAN:  Yes, Your Honor.

13           MR. MONTEVERDE:  Yes, definitely.  Thank you.

14           THE COURT:  All right.  Well, I've got something

15   else at 4:30, I believe.  So nice to meet you all.  Nice to

16   see those of you who I see infrequently, but I have seen

17   before.

18           And I'll look forward to this sometime next

19   week.  I don't know who submitted this one.  Whoever

20   submitted presumably will resubmit it.

21           Thank you.

22           (Everyone said, Thank you, Your Honor.)

23           (Scheduling conference was concluded at

24   4:32 p.m.)

25           I hereby certify the foregoing is a true and

1     accurate transcript from my stenographic notes in the

2     proceeding.          /s/ Heather M. Triozzi
                           Official Merit Reporter
3                          U.S. District Court

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25